IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLE RICHARD ENTY,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 24-CV-4888 |
| TAX REVIEW BOARD, *et al.*,<br>    Defendants. | :<br>:<br>: |

## MEMORANDUM

**MCHUGH, J.**                                                                                          **October 2, 2024**

Kyle Richard Enty filed this pro se civil case naming as Defendants the Tax Review Board of the City of Philadelphia ("the Board"), its director Melissa Andre, Esq., "Revenue Customer Service," "Real Estate Taxes," Sheriff Rochelle Bilial, the City of Philadelphia, and Philadelphia Mayor Cherelle Parker. Enty also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Enty leave to proceed *in forma pauperis* and dismiss his Complaint.

**I.      FACTUAL ALLEGATIONS**[1]

Mr. Enty's factual allegations relate to the impending sheriff's sale of his property. While he also includes myriad allegations about the functioning of the City, the Philadelphia Board of Education, SEPTA, and other entities, he appears to seek an injunction to stop the sheriff sale because he asserts he was subject to race discrimination by the City in his attempt to participate in a deferred payment program for his unpaid real estate taxes. As best as the Court

---

[1] The factual allegations set forth in this Memorandum are taken from Enty's Complaint (ECF No. 2.) The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.

can understand his allegations, Enty contends that the City has been enabling and implementing a conspiracy to protect Black criminals through the City's Black workforce, while denying his right to equal protection of the law, presumably related to the tax deferral program, because he has "light skin." (Compl. at 3-4.)  He sought to participate in the City program for owner/occupiers of property – apparently a payment plan for unpaid real estate taxes –for which he paid a $300 fee, had a hearing, and was initially told he could participate, but was then told by Defendant Andre that he would have to provide the City with a copy of a current utility bill to prove he lived at the property. (*Id*. at 4.)  He provided utility bills from five years ago but she would not accept them, telling Enty he had to provide recent bills. (*Id*.)  Enty claims he was unable to get any utility company to come to his property to take readings and they have refused to provide him with a current bill. (*Id*.)  Enty asserts that there was a fire at the property in November 2022, and no bill could be issued until the damage was repaired, implying possibly that he does not live there or does not currently have utility service in his name at the property. (*Id*.)  Andre told him that without a current utility bill, he could not participate in the program for owner occupied property tax relief. (*Id*.)

On August 27, 2024, Mr. Enty found a flier on his property saying that the property would be sold at a sheriff sale on October 14, 2024. (*Id*.)  The flier states that "by virtue of a writ of decree" of a cited case from the Court of Common Pleas, Enty's property will be sold by the sheriff. (*Id*. at 12 (copy of flier).)  He claims he is being prevented from participating in the City program due to the City's "inflexible position." (*Id*.)  While conceding that the City does not have a race discrimination policy against light-skinned individuals "per se," (*id*. at 3), he asserts an equal protection claim under the Fourteenth Amendment based on his allegation that Black people in the City "are a privileged group that does not have to follow the rules,

2

regulations or laws of the City and can flout them without consequence while non blacks receive the full repercussions for violations of these same laws." (*Id*. at 5.)  He makes further allegations about a conspiracy to protect Black criminals and claims that the City and the Mayor are responsible for it "under supervisor liability." (*Id* at 5-6.)  He also makes numerous allegations of unequal treatment of Black people and people who are not Black in the Philadelphia Public School System, SEPTA, the Philadelphia District Attorney's Office, the Philadelphia Free Library, and Temple University, and shares his beliefs about why this happens.  (*Id*. at 5-8, 14-38.)  He does not allege, however, how he was personally impacted by these alleged differences in treatment in relation to his participation in the tax payment deferral program.  He also alleges that people who live on his block violate the rules of Section 8 housing and Sheriff Bilial and Defendant Andre have no "desire" to enforce the rules, but again does not explain how this relates to his attempt to participate in the tax payment deferral program.  (*Id*. at 10.)

Mr. Enty alleges he could die of exposure if he is evicted from his home. (*Id*. at 7.)  He wants the Court to compel the City to admit him into the owner occupied payment agreement program and grant him one year to begin to make payments, presumably to prevent the October 14 sheriff sale of his property.  (*Id*.)  In the alternative, if he is "put out of his home," he seeks money damages equal to three times the value of the home.  (*Id*.)

II.     **STANDARD OF REVIEW**

The Court grants Enty leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, ___ F.4th ___, 2024 WL 3820969 (3d Cir. Aug. 15, 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. The Court construes the allegations of a *pro se* complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). "This means we remain flexible" *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

**III.  DISCUSSION**

Mr. Enty alleges that his equal protection rights were violated. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677)

4

(emphasis in original); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

### A.  Injunctive Relief is Barred by the Anti-Injunction Act

Mr. Enty seeks as relief on his claim that the Court compel the City to admit him into the owner occupied tax payment deferral program, and excuse his nonpayment of taxes for one year, presumably to prevent the sheriff sale of his property. To the extent that he seeks an order to stop the sheriff sale, the Court has no authority to grant this relief.

The Anti-Injunction Act, 28 U.S.C. § 2283, "prohibits injunctions having the effect of staying proceedings in state courts except 'as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 103 (3d Cir. 2002) (quoting 28 U.S.C. § 2283)). "The Act 'is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions'" – authorization by Congress, necessary for aid of jurisdiction, or to protect a judgment, which are to be construed narrowly. *Id*. (quoting *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)).

Courts in the Third Circuit have consistently held that "[t]he Anti-Injunction Act precludes a federal court from enjoining state court eviction or foreclosure proceedings."

5

*McMillan v. Nationstar Mortg. Co.*, No. 20-1321, 2020 WL 4201605, at *2 (E.D. Pa. July 22, 2020) (citing cases); *Frankel v. Guzman*, No. 20-5208, 2020 WL 6161512, at *2 (E.D. Pa. Oct. 21, 2020) (rejecting emergency request to enjoin eviction proceedings and noting weight of authority in Third Circuit to support holding); *Rhett v. Div. of Hous., Dep't of Cmty. Affairs*, No. 14-5055, 2014 WL 7051787, at *3 (D.N.J. Dec. 12, 2014) ("[T]o the extent Plaintiff requests that this Court dismiss the eviction proceedings or order them transferred to this Court, the Anti–Injunction Act prohibits this Court from taking such action."); *Frankel v. Kessler*, No. 21-0093, 2021 WL 229321, at *5 (E.D. Pa. Jan. 22, 2021) (dismissing complaint on screening and denying temporary restraining order where claims related to state court eviction proceeding were barred by Anti-Injunction Act). Accordingly, the Court cannot enjoin the sale of the property, either directly or indirectly by ordering the City to accept Enty into the deferred payment program to prevent the sale. *See, e.g., Lightfoot v. Bank of New York Mellon*, No. 17-1284, 2017 WL 4151171, at *1 (M.D. Pa. Sept. 19, 2017) (construing a request for preliminary injunctive relief "until it could be determined whether the plaintiff was eligible for a Fannie Mae 'Flex' loan modification" as a request for a preliminary injunction to stay of the sheriff sale resulting from a final judgment in state foreclosure proceedings, and thus prohibited under the Anti-Injunction Act).

      **B.**      **Equal Protection Claim for Damages**

      To the extent that Enty seeks money damages, he has failed to allege a plausible equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S.

202, 216 (1982)). To establish an equal protection violation, a plaintiff must allege facts to show it is plausible that he was treated differently than other similarly situated persons, and that this different treatment was the result of intentional discrimination based on his membership in a protected class. *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)).

While Enty makes extensive allegations about unequal treatment in society in general, none of his allegations concern race-based discrimination in the tax payment deferral program.[2] He fails to allege that any persons who are similarly situated, namely persons who failed to provide non-current utility bills and thus failed to meet the apparent requirements of participation, were treated differently and accepted to the tax payment deferral program. He also

---

[2] Enty has also failed to allege a plausible civil rights conspiracy claim. The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski*, 904 F.3d at 294 (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). Enty alleges a conspiracy between the City and its own employees. This is not the basis of a plausible claim because employees of an entity cannot conspire with that entity unless they are acting in a personal capacity in undertaking the conspiracy. *Robison v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 (3d Cir. 1988); *DiBenedetto v. City of Reading*, No. 96-5055, 1998 WL 474145, at *11, 13 (E.D. Pa. July 16, 1998) (claim that city conspired with its own health officer to violate plaintiff's civil rights was not plausible (citing *Robison*)).

does not allege that Defendant Andre was motivated by racial animus when she informed him that five-year-old utility bills were not acceptable to show he was an owner/occupier of the property.

Mr. Enty's claims against the City are also not plausible.[3] To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the

---

[3] City agencies, such as the Board and the "Revenue Customer Service" are not suable entities under § 1983 because they do not have a separate legal existence.  *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *Vangjeli v. City of Phila*, No. 15-1566, 2015 WL 5793926, at *3 (E.D. Pa. Sept. 30, 2015), *aff'd sub nom*. *Vangjeli v. City of Philadelphia*, 655 F. App'x 132 (3d Cir. 2016) (holding that the Free Library is not an entity subject to suit since no department or agency of the City of Philadelphia has a separate corporate existence) (quoting 53 Pa. C.S.A. § 16257); *Minsec Cos., Inc. v. City of Philadelphia*, No. 09-3396, 2010 WL 996504, at *4 (E.D. Pa. Mar. 18, 2010) (holding that the Department of Licenses and Inspection does not have separate legal existence from the City).  Accordingly, Enty's claims against the Board and the Revenue Customer Service will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His claim against the "Real Estate Taxes" – since it appears to be a claim against the City agency that collects that tax – is dismissed for the same reason.

City.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).  "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Mr. Enty concedes that the City does not have a policy of racial discrimination "per se." To the extent he alleges his rights were violated due to an informal policy or custom of the City, he has not alleged facts to make this claim plausible.  First, he does not make any policy or custom allegation relating to discrimination in the administration of the tax payment deferral program.  His allegations about discrimination by other entities such as SEPTA, Temple University, the District Attorney's Office, or other City agencies such as the Free Library, do not state a plausible claim of race discrimination in the administration of the tax payment deferral program.  Finally, his claims against Mayor Parker and Sheriff Bilial are not plausible because he does not allege that either of them was personally involved in race discrimination in the administration of the tax payment deferral program.  *See Rode*, 845 F.2d at 1207.

## IV.   CONCLUSION

For the reasons stated, Enty's Complaint will be dismissed for failure to state a plausible claim for relief.  The Tax Review Board of the City of Philadelphia, "Revenue Customer Service," and "Real Estate Taxes" will be dismissed as Defendants and his claims for injunctive relief will be dismissed with prejudice.  Since Enty may be able to allege additional facts showing that he was subject to discrimination based on his race in his attempt to participate in the program, the claims for money damages will be dismissed without prejudice and he will be

permitted an opportunity to file an amended complaint to cure the defects the Court has identified. An appropriate Order follows with additional information about amendment.

                                    **BY THE COURT:**

                                    **/s/ Gerald Austin McHugh**

                                    **GERALD A. MCHUGH, J.**